# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DARLENE CRUIT | § | |
| | § | Civil Action No.  4:17-CV-483 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| MTGLQ INVESTORS, LP | § | |
| | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant MTGLQ Investors, LP's Motion to Enforce Settlement (Dkt. #33), which the Magistrate Judge advised the Court to deny in her Report and Recommendation (Dkt. #50).  After carefully considering all relevant filings, including the parties' respective responses to the Report and Recommendation (Dkt. # 53; Dkt. #54), the Court has made a de novo determination to adopt the Report and Recommendation to the extent described herein.

## BACKGROUND

On June 24, 2017, Plaintiff Darlene Cruit brought a quiet title claim against MTGLQ Investors, LP, seeking to enjoin MTGLQ from foreclosing on her residence (the "Property").  The parties attended a mediation in mid-November where they discussed possible settlement terms without reaching an agreement.  Two weeks later, however, Defendant's counsel sent Plaintiff's counsel an email, stating, "I think we have approval" for a settlement and listed the following proposed settlement terms:

- [Defendant] agrees to give the borrower until June 30, 2018 to sell the [P]roperty;

- Starting January 1, 2018, the borrower will make monthly payments in the amount of $2,624.94, which will be sent to [Defendant's counsel's] office;

- If the [P]roperty does not sell by June 30, 2018 or the borrower does not timely make her monthly payments, [Defendant] can post the [P]roperty for foreclosure immediately;

- Plaintiff will dismiss the suit with prejudice;

- Plaintiff agrees to execute a settlement and release, which will include a full release and waiver of any defenses to foreclosure;

- The Settlement and Release will include, as a recital, the payoff amount as of the Settlement and Release Agreement.

(Dkt. #33, Exhibit 3 at pp. 1–2). Defendant's counsel added that, if Plaintiff's counsel agreed that these were the terms the parties discussed at the mediation, he would file a notice of settlement. Defendant's counsel then sent a second email with a draft notice of settlement, prompting Plaintiff's counsel to reply, "Looks fine," a minute later (Dkt. #33, Exhibit 3 at p. 1). A Joint Notice of Settlement (the "Notice") was then filed with the Court, stating that the parties had reached a resolution and were "working to finalize a settlement agreement." (Dkt. #25).

Over a month after the Notice was filed, Defendant's counsel sent Plaintiff's counsel an unsigned draft of a Settlement and Release Agreement (the "Draft"). Among other representations, the Draft states that it contains the parties' "entire agreement," that each party "had the opportunity to review and/or modify" its terms, that the parties executed the Agreement "freely and voluntarily with full knowledge and understanding of its terms," and that, after the Agreement was executed, Plaintiff would discharge Defendant of claims arising from her loan on the Property (the "Loan") and would file a stipulation for dismissal (Dkt. # 36, Exhibit 3 at pp. 3–5). Additionally, unlike the Email Exchange, the Draft identifies the "payoff amount of the loan, as of January 5, 2018" to be $357,960.73 (Dkt. #36, Exhibit 3 at p. 1).

On receiving the Draft, Plaintiff's counsel immediately notified Defendant that he and his client had agreed to a different "payoff amount." (Dkt. #43 at pp. 8–9). Plaintiff contends that she

understood the "payoff amount" to include the balance and the escrow amounts reflected in the statement referenced at the mediation. She further contends that the payoff amount listed in the Draft fails to credit certain payments she had made on the loan and improperly includes fees that had been previously waived (Dkt. #47, Exhibit 1). After the parties tried to mediate the case for a second time, with no success, Defendant filed this motion.

Defendant argues that, when Plaintiff's counsel stated that the proposed terms "[l]ook[ed] fine," he committed his client to a contract to sign a settlement agreement containing these terms and, as a result, the Court should direct Plaintiff to sign the Draft. Plaintiff, on the other hand, denies that the Email Exchange is a binding agreement to settle the case. After considering the parties' arguments, the Magistrate Judge entered a Report and Recommendation advising the Court to deny the motion to enforce settlement. The Magistrate Judge reasoned that the terms of the Email Exchange were too indefinite to form a binding contract, citing the Email Exchange's "bare reference to a 'payoff amount'" that Plaintiff would owe, without any indication as to how that amount would be calculated. *See Rocor Int'l., Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 262–63 (Tex. 2002) (stating in a different context that, "[g]iven the tactical considerations inherent in settlement negotiations, an insurer should not be held liable for failing to accept an offer when the offer's terms and scopes are unclear or are the subject of dispute").[1]

## ANALYSIS

Defendant argues that the Magistrate Judge improperly concluded that the "payoff amount" was indefinite because: (1) the term "payoff amount" is unambiguous in light of its generally

[1] *See also Bandera Cty. v. Hollingsworth*, 419 S.W.3d 639, 646-47 (Tex. App.–San Antonio 2013, no pet.) (finding a purported settlement agreement unenforceable where the record reflected that the parties were negotiating their settlement with reference to two separate tax statements, one of which did not include certain penalties or interest"); *MacDonald Devin, P.C. v. Rice*, No. 05-14-00938-CV, 2015 WL 6468188, at *3 (Tex. App.–Dallas Oct. 27, 2015, no pet.) (finding a contract too indefinite where, "although the parties set out the particular discovery responses that would be confidential," they did not agree on "how to implement the confidentiality procedure").

accepted meaning, and (2) Plaintiff's interpretation of the "payoff amount" was unreasonable based on an objective view of the parties' interactions. As explained in more detail below, Defendant's Objections are moot because the motion to enforce settlement fails for two more fundamental reasons. Defendant fails to establish that Plaintiff positively and unequivocally accepted a clearly communicated offer to settle the case or that, under the terms of the Email Exchange, Plaintiff was required to sign the Draft.

A settlement agreement is a type of contract, *see Guidry v. Halliburton Geophysical Srvs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992), and is thus governed by ordinary contract principles, *see Estate of Ray v. C.I.R.*, 112 F.3d 194, 196 (5th Cir. 1997). As such, a settlement agreement is formed only where, based on the surrounding circumstances, *Kurio v. United States*, 429 F.Supp. 42, 46 (S.D. Tex. 1970) (citing *Local Union No. 787, Int'l. Union of Electrical, Radio and Machine Workers, AFL-CIO v. Collins Radio Co.*, 317 F.2d 214, 220 (5th Cir. 1963); 3 A. Corbin, Contracts §§ 538, 543A-B (1960 ed. & Supp. 1964)), it appears that one party has made an offer, which the other has "positive[ly] and "unequivocal[ly]" accepted, *see Austin Presbyterian Theological Seminary v. Moorman*, 391 S.W.2d 717, 720 (Tex. 1965), *cert. denied,* 382 U.S. 957 (1965). Accordingly, an agreement has not been formed when the parties have indicated only that they may reach an agreement in the immediate future. *See id*. For instance, as the Texas Supreme Court has explained,

> [A] reply to an offer to lease premises in the following terms was held not to make a binding contract:-'I have decided on taking No. 22 Belgrave Road, and have spoken to my private agent * * * who will arrange matters with you.' The same is true of a telegram to a bidder for public work. 'You are low bidder. Come on morning train;' also of the following reply to an offer to sell coal, 'Telegram received. You can consider the coal sold. Will be in Cleveland and arrange particulars next week.' Likewise a reply to an offer to sell land, 'Have twice attempted the tender of the first payment of $500 upon the agreement made between us on the 7th of December last. I will meet you, etc., when I shall be ready to make

4

> tender of the money and execute the proper agreements thereupon,' is insufficient.'
> I Williston on Contracts, 3rd ed. 1957, § 72.

*Id.*[2] As the party seeking to enforce its terms, Defendant has the burden of establishing that a valid and enforceable settlement agreement exists. *See John A. Broderick, Inc. v. Kaye Bassman Int'l Corp.*, 333 S.W.3d 895, 905 (Tex. App.–Dallas 2011, reh'g overruled) (assigning the burden of proof on the party seeking to enforce the settlement agreement).

Defendant argues that, through their attorney's Email Exchange, the parties entered into a binding agreement to settle the case. In the first email, Defendant's counsel states that he "thinks" he had approval for a settlement, provides bullet points containing proposed terms, and advises Plaintiff's counsel that he will file a Joint Notice of Settlement if Plaintiff finds the proposed terms amenable. Defendant's counsel then sends a second email attaching a draft of the Joint Notice of Settlement, prompting Plaintiff's counsel to reply, "[l]ooks fine," one minute later. The Court is not convinced that the Email Exchange reflects anything more than standard correspondence between two attorneys negotiating an agreement that may be forthcoming. Defendant's counsel's first two emails could not communicate an offer to settle the case when, as reflected in his first email, he was not 100% certain he even had approval for a settlement. *See Rocor Int'l.*, 77 S.W.3d at 263 (explaining that a settlement offer must be clearly communicated in light of the "fluid and complex" nature of and "tactical considerations inherent in" settlement negotiations). Likewise, Plaintiff's counsel's reply, which suggests *either* that the notice of settlement *or* the proposed terms *seemed* or *appeared* "fine," *see Look*, Dictionary.com, https://www.dictionary.com/browse/look (last visited September 24, 2018) (defining "look," in pertinent part, "to *appear* or *seem*")

---

[2] *See also MRC Permian Co. v. Three Rivers Operating Co.*, No. 05-14-00353-CV, 2015 WL 4639711, at *12–*13 (Tex. App.–Dallas Aug. 5, 2015, reh'g overruled) (finding a letter, which stated that Plaintiff was "still ready, willing and able to exercise our preferential purchase option . . . in accordance with its terms and conditions as indicated by our [June 5] letter" did not constitute an unequivocal, unqualified, and unambiguous acceptance").

(emphasis added), is hardly the type of "'unqualified, absolute, unconditional, unequivocal, unambiguous, [and] positive'" acceptance necessary to form a contract, *see W. Tex. Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1565 (5th Cir. 1990) (quoting *Scott v. Vandor*, 671 S.W.2d 79, 84 (Tex. App.–Houston [1st. Dist.] 1984, writ ref'd n.r.e.)). Consistently, the Notice of Settlement ultimately filed stated that the Parties "are currently *working to finalize* a settlement agreement" and did not ask the Court to close the case (Dkt. #25). *See Austin Presbyterian*, 391 S.W.2d at 720 (explaining that a reply to an offer to sell land, which states, "I shall be ready to make tender of the money and execute the proper agreements thereupon" does not form a contract) (citing I Williston on Contracts, 3rd ed. 1957, § 72).

Although it now argues otherwise, Defendant's conduct after the Email Exchange suggests that Defendant fully understood Plaintiff had not agreed either to settle the case or even to sign a forthcoming agreement containing the proposed terms. This is evident from the Draft Defendant's counsel asked Plaintiff's counsel to sign more than a month after the Email Exchange. As stated, the Draft states that it constituted "the entire agreement of the parties," that the parties each had an "opportunity *to review and/or modify*" its terms, and that both parties had "full knowledge and understanding" of those terms before the draft was executed and a release was filed (Dkt. # 36, Exhibit 33 at pp. 3—5). If Plaintiff had either already settled the case or agreed to sign any agreement including the summarized terms, the Draft, presumably, would not have required *both parties* to confirm that they had an "opportunity to review *and/or modify*" its terms and had "full knowledge and understanding" of those terms before signing it (Dkt. # 36, Exhibit 3 at 3—5).[3]

---

[3] Additionally, the fact that the Draft contained these, among other new terms, arguably signaled that Defendant was proposing a new agreement to settle the case, which may have provided Plaintiff with the opportunity to reconsider any agreement the parties had previously reached. *See W. Tex. Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1565 (5th Cir. 1990) ("An unqualified acceptance guarantees that the owner of the property will receive the benefit of the bargain under which he agreed to relinquish his interests. Where an acceptance varies from the original offer, the property owner stands to lose his bargain. As a result, a purported acceptance . . . which modifies, adds to or otherwise qualifies the terms of the offer, generally constitutes a rejection . . . and a counter-offer.").

The Court could not direct Plaintiff to sign the Draft, even assuming she had agreed to sign any agreement containing the proposed terms in the Email Exchange. While the Email Exchange suggests that Plaintiff was amenable to remaining indebted to Defendant in the "payoff amount" for the loan on the Property, the Draft does not track this language. It, instead, states that Plaintiff owes Defendant $357,960.73–that is, the payoff amount *as calculated by Defendant*. The Court could therefore direct Plaintiff to sign the Draft only if Defendant established, as a matter of law, that the Draft correctly calculated the total amount Plaintiff owed on the Loan. Otherwise, Plaintiff would not be in breach of the Email Exchange for her refusal to sign the Draft. It would be improper for the Court to make this determination at this time–even assuming that, as Defendant contends, the "payoff amount" necessarily includes the balance, interest, and fees necessary to totally pay off the loan. This is because, although Defendant states that it properly calculated this amount, Plaintiff has submitted evidence suggesting otherwise. Plaintiff states, in a sworn declaration (Dkt. #47, Exhibit 1), that Defendant's calculated amount fails to credit her for various payments she has made and improperly charges her for fees that had been waived–a contention to which Defendant has not responded. Whether or not Plaintiff would be in breach of the Draft under these circumstances consequently turns on a disputed fact, which the Court is not prepared to resolve in Defendant's favor.[4]

---

[4] Additionally, even if the Email Exchange constituted an agreement to settle the case, it is not clear if the Court could enforce that agreement. The enforceability of a settlement agreement in a diversity case in a federal district court in Texas is governed by Texas Rule of Civil Procedure 11, which requires that a settlement agreement is signed by the parties, among other requirements. *See Borden v. Banacom Mfg. and Marketing, Inc.*, 698 F.Supp. 121, 123-24 (N.D. Tex. 1988). In this case, neither party's counsel affixed a graphical representation of his signature or an "/s/" next to his name to clearly denote that he electronically signed the emails at issue. They, instead, appear to have allowed their email platforms to auto-populate their names and contact information at the bottom of their emails. Courts are split on whether, under Texas Rule of Civil Procedure 11, Plaintiff's counsel should be deemed to have "signed" the email under these circumstances. *Compare Cunningham v. Zurich American Ins. Co.*, 352 S.W.3d 519, 529 (Tex. App.–Fort Worth 2011) (finding that an automated signature block does not constitute a signature) *with Williamson v. Bank of New York Mellon*, 947 F.Supp.2d 704, 719 (N.D. Tex. 2013) (disagreeing with *Cunningham*, in dicta). However, in light of the other grounds to deny Defendant's motion to enforce settlement, the Court does not weigh in on this dispute at this time.

## CONCLUSION

Accordingly, the Court adopts the Magistrate Judge's Report and Recommendation (Dkt. #50) as the findings and conclusions of the Court to the extent described herein. Defendant MTGLQ Investors, LP's Motion to Enforce Settlement Agreement (Dkt. #33) is **DENIED**.

**SIGNED this 26th day of September, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE